1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF HAWAII

3

4    UNITED STATES OF AMERICA,    ) CRIMINAL NO. 04-00322DAE
                                  )
5              Plaintiff,         ) Honolulu, Hawaii
                                  ) December 5, 2005
6         vs.                     ) 9:11 a.m.
                                  )
7    (01) ABRAHAM NGUYEN MARTIN,  ) SENTENCING TO COUNTS 9, 11,
                                  ) 12, 13, 16, 17, 20, 22, 27,
8              Defendant.         ) 29, 30, 32, 34, 38, 40, 42,
                                  ) 44, 46, 48, 49, 50, 53, 54,
9                                 ) 56, 57, 58, 59, 63, 58, 69,
                                  ) 71, 72, 75, 76 & 77 OF THE
10                                ) SUPERSEDING INDICTMENT AS TO
                                  ) DEFENDANT (01) ABRAHAM
11                                ) NGUYEN MARTIN
                                  )
12   _____    )
                                  )
13   UNITED STATES OF AMERICA,    )
                                  )
14             Plaintiff,         ) CRIMINAL NO. 05-00049DAE
                                  )
15        vs.                     )
                                  ) SENTENCING TO COUNTS 9 & 10
16   (01) ABRAHAM NGUYEN MARTIN,  ) OF THE FELONY INFORMATION AS
                                  ) TO DEFENDANT (01) ABRAHAM
17             Defendant.         ) NGUYEN MARTIN
                                  )
18                                )
                                  )
19                                )
                                  )
20   _____    )

21              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DAVID ALAN EZRA,
22            UNITED STATES DISTRICT JUDGE

23

24

25


EXHIBIT D

2

```
 1    APPEARANCES:

 2    For the Government:        WILLIAM SHIPLEY, ESQ.
                                 Office of the U.S. Attorney
 3                               PJKK Federal Bldg.
                                 300 Ala Moana Blvd., Suite 6100
 4                               Honolulu, Hawaii 96850

 5

 6    For the Defendant:        MICHAEL A. WEIGHT, ESQ.
                                 Office of the Federal Public
 7                               Defender
                                 PJKK Federal Bldg.
 8                               300 Ala Moana Blvd., Suite 7104
                                 Honolulu, Hawaii  96850
 9

10

11

12

13

14

15

16

17

18

19

20    Official Court           Cynthia Fazio, RMR, CRR
      Reporter:                 United States District Court
21                               P.O. Box 50131
                                 Honolulu, Hawaii 96850
22

23

24

      Proceedings recorded by machine shorthand, transcript produced
25    with computer-aided transcription (CAT).
```

1    MONDAY, DECEMBER 5, 2005                    9:11 A.M.

2        THE CLERK:  Criminal 04-322DAE, Criminal 05-49DAE,

3    United States of America versus Defendant Abraham Nguyen

4    Martin.  This case is called for Sentencing.

5        Counsel, please state your names for the record.

6        MR. SHIPLEY:  Morning, Your Honor.  William Shipley

7    for the United States.  Not with me at this point is Joseph

8    Robertson, Secret Service.  He was here for the sentencing of

9    the co-defendant a few weeks ago and I'm not certain why he's

10   not here this morning.  I've made a couple of calls trying to

11   find him and I'm confident that at the worst is just simply an

12   oversight on his part on the calendar, but he may be out doing

13   some official task as well.  I just don't know at this point.

14       THE COURT:  All right.

15       MR. WEIGHT:  Morning, Your Honor.  Michael Weight for

16   the defense.  Mr. Martin is here, we're ready to proceed.

17       THE COURT:  All right.  Mr. Weight, have you and your

18   client had a full opportunity to read, review and discuss the

19   presentence report and file any objections you deemed

20   appropriate?

21       MR. WEIGHT:  Yes, Your Honor.

22       THE COURT:  All right.  You can be seated.

23       MR. WEIGHT:  Thank you.

24       THE COURT:  On March the 18th, 2005, the defendant

25   pled guilty to bank fraud, in violation of 18 U.S.C. 1344 and

1    which consisted of Counts 9, 12, 13, 20, 22, 27, 29, 30, 32,

2    34, 38, 40, 42, 44, 46, 54, 59, 63, 68, 69, 72, 75, 76 and 77

3    of Criminal Number 04-00322DAE; access device fraud, in

4    violation of 18 U.S.C. 1029(a)(2), which consisted of Counts

5    11, 16, 17, 48, 49, 50, 53, 56, 57, 58 and 71 of Criminal

6    Number 04-00322DAE; money laundering, in violation of 18 U.S.C.

7    1956, which was Count 9 of Criminal Number 05-0049DAE;

8    copyright infringement, in violation of 7 U.S.C. Section

9    506(a)(1) and 18 U.S.C. 2319(b)(1), which was Count 10 of

10   Criminal Number 05-00049DAE.

11           There is a plea agreement in this case covering these

12   charges.  The court has reviewed it and I am inclined to accept

13   the plea agreement unless there is some objection.

14           MR. SHIPLEY:  No objection from the government, Your

15   Honor.

16           MR. WEIGHT:  No objection, Your Honor.

17           THE COURT:  Court hereby does accept the plea

18   agreement finding that the Rule 11(e)(1)(A) plea agreement does

19   adequately reflect the seriousness of the offense behavior and

20   by accepting the plea agreement the court will not be

21   undermining the statutory purposes of sentencing.

22           There were no objections to the factual statements

23   contained in the investigative report.  The court adopts those.

24           There were some objections to the calculation of the

25   guidelines.  With respect to the government, the government

 1    contended that a three-level enhancement under 3A1.1 for

 2    vulnerable victim applied in this case.  The government

 3    asserted that the defendant and Luu knew that Miss Solenta --

 4    Soleta was an elderly lady who lived alone and was unable to

 5    attend to her own financial affairs.  Then they took advantage

 6    of her by compromising both her bank and credit accounts,

 7    knowing that it would not be discovered until a caregiver

 8    inspected her statements at a later time.

 9          The probation office, I believe, had not acted on

10    that..

11          MR. SHIPLEY:  Your Honor, the probation officer was

12    waiting for additional information from the government.  In

13    talking with the agent about this, it was uncertain between the

14    two of us whether it was Mr. Luu or Mr. Martin that

15    specifically knew about the living circumstances and age of

16    Ms. Soleta.  Mr. Luu lived in the same apartment complex as

17    Ms. Soleta.  We were unable to go to the probation officer and

18    say that we absolutely were confident Mr. Martin knew of

19    Ms. Soleta's age and infirmity and the fact that she relied

20    upon a third-party.  So, on that basis we did not get back to

21    the probation office with additional information.

22          THE COURT:  All right.  Okay.  So I'm going to deem

23    that as withdrawn.  And the probation officer did not add it

24    in.

25          THE PROBATION OFFICER:  Correct.

1          THE COURT:  Paragraph 129, the government had asserted

2    that a four-level enhancement for playing a leadership role in

3    the offense applied because the defendant directed the activity

4    of both Luu and his wife.

5          The statements provided by Luu regarding the

6    defendant's role in the offense, again, were not corroborated

7    by a second source.  And the probation officer therefore did

8    not include that.  Do you wish to argue it further now?

9          MR. SHIPLEY:  Your Honor, I will ask to argue that

10    further either at this point or when the court asks the

11    government for its position on sentencing.

12          THE COURT:  No, right now.

13          MR. SHIPLEY:  Okay.  Your Honor --

14          THE COURT:  That's what we're doing.

15          MR. SHIPLEY:  -- well, the government's point would be

16    that while the allegations of Mr. Luu may not be supported by a

17    second source, they're certainly supported by the massive

18    documentary information.

19          In addition, the government asserted that the

20    defendant's leadership of his wife's involvement in his

21    fraudulent activity, not only the transaction involving the

22    vehicle, which she's previously been sentenced by this court in

23    connection with, but also the use of her jewelry store as a

24    drop location or a location to move jewelry through.

25          As the court can recall, the factual allegations were

1   that the defendant would take stolen credit cards, go to other

2   merchants and in fact involve those other merchants who were

3   aware the defendant was using credit cards not in his name.  He

4   would buy inventory from these other jewelry merchants in

5   Chinatown using the stolen credit cards, then take that

6   inventory and sell them out of Anna Jewelry, thereby realizing

7   value from the use of the stolen credit card.  So, he's

8   implicated -- he's involving his wife in his conduct as well as

9   these other merchants.

10          The criminal history or the criminal activity is

11  obviously otherwise extensive and the four-level enhancement

12  only requires in addition to that that at least one other

13  person be directed, managed, supervised or -- or that any form

14  of leadership role in connection with one other person be found

15  to be true, and I think that's clearly established in this

16  case.

17          MR. WEIGHT:  Your Honor, the one truth that you can

18  find if you ferret through all the information in the multitude

19  of records that comprise this case is that Mr. Luu is the arch

20  criminal here.  Mr. Luu has a long and jaded criminal history

21  and involvement in all kinds of nefarious activities.

22          He suckered Martin into becoming at worst his partner

23  in this and Martin had a jewelry store that was used in the

24  process of this.  But Luu and Martin were at worst partners and

25  they -- I would assert that neither one was a leader or if

1    there were, Luu was the leader.

2          Insofar as Mrs. Martin's involvement in this,

3    Mrs. Martin was peripheral at best, but she just tagged along

4    with her husband.  And again, if in every case, if in every

5    case where a husband and wife are charged with the same

6    criminal conduct, you were to find that while the husband must

7    have led her astray therefore he gets a leadership role, that

8    is not what the guidelines contemplate.  That is not what the

9    United States sentencing commission took into account and it is

10   most certainly not what is contemplated by 18, United States

11   Code, Section 3553(a) when it instructs the court to craft a

12   sentence that fits the facts and fits the crime.

13         Therefore, we argue in this case that no leadership

14   role should be tacked on to the already pretty stiff sentence

15   that the defendant is facing.

16         THE COURT:  Any rebuttal?

17         MR. SHIPLEY:  Your Honor, it wasn't Mr. Luu that had

18   went to the Mainland and opened multiple bank accounts in

19   California, Alabama and Texas.  That was Mr. Martin.

20         It wasn't Mr. Luu depositing stolen access device

21   checks on the accounts of multiple victims.  That was

22   Mr. Martin.

23         Mr. Luu has provided his version of events.  That

24   Mr. Luu had some computer sophistication that Mr. Martin

25   apparently lacked.  Mr. Martin brought information.  Together

1    they used both online and mail-in procedures to establish

2    credit in the names of the victims, but it was Mr. Martin that

3    was depositing these stolen mail access device checks all over

4    three states in a half dozen different accounts, opened

5    specifically for the purpose of depositing those items.

6          So, while Mr. Martin and Mr. Luu may have been

7    initially involved in some -- in some co-equal fashion, it's

8    clear that Mr. Martin is the one that's driving this scheme by

9    his conduct.  Therefore, I think it's a fair implication for

10   the court to consider that Mr. Martin was really the leader of

11   this criminal enterprise and not Mr. Luu.

12         Mr. Martin is the one with the advanced degree.

13   Mr. Martin is the one with a clear level of sophistication,

14   financial sophistication and knowledge and not a street

15   criminal drug addict like Mr. Luu.

16         THE COURT:  Well, this is always a difficult call for

17   the court where you have initially two people who are working

18   fairly closely together and both performing a substantial -- or

19   I guess you would say occupying a substantial role in the

20   offense.

21         But I have looked very -- I knew this was an issue.

22   I've looked very carefully at the record and at the evidence in

23   this case, and it is clear to me that at some point and at some

24   relatively early point Mr. Martin did in fact assume a

25   leadership role here, that he in fact did take over the -- the

1    enterprise in that while Mr. Luu was -- was clearly involved

2    and substantially involved, it was Mr. Martin who really had

3    the brains and was driving the operation, and quite

4    successfully.  I mean he's a very bright guy.  I mean it's too

5    bad he didn't put his intelligence to a legitimate enterprise.

6    I think he could have done very well.  Maybe even better than

7    he did as a bunko artist, as they used to call it in the '50s.

8    But as a matter of fact, he did what he did.  So, the court is

9    going to assess the enhancement because I believe in this case

10   it's truly deserved.

11           So that changes the guideline computations.

12           THE PROBATION OFFICER:  Yes, it does, Your Honor.  And

13   I'm assuming that the court is granting a two-level increase

14   under 3B1.1(c), as the defendant was a leader/organizer of a

15   criminal activity that did not involve five or more

16   participants.

17           The two-level increase results in a total offense

18   level of 23, criminal history Category 3 provides for a

19   guideline imprisonment range of 57 to 71 months, and a advisory

20   guideline fine range of -- let me pull that up quickly --

21   10,000 to $100,000.  All other advisory guideline ranges remain

22   the same.

23           THE COURT:  Yes.  Thank you.

24           And she's correct, it's a two-level enhancement, not a

25   four-level enhancement.  So it doesn't change the sentencing

1    range that dramatically actually.

2         All right.  The court finds the offense level is 23,

3    the imprisonment range is 57 to 71 months, probation is not

4    available, 3 to 5 years of supervised release, and a 10,000 to

5    100,000 fine, and restitution of 37,149.91.

6         All right, Mr. Weight.

7         MR. WEIGHT:  Thank you, Your Honor.

8         Your Honor, Abraham Martin is not a bad man.  He's

9    worked hard throughout his life.

10         THE COURT:  This isn't exactly his first involvement

11   with the law either.

12         MR. WEIGHT:  Well, his first involvement in the law,

13   Your Honor, involved some tax issues.

14         THE COURT:  Yeah, right.

15         MR. WEIGHT:  He's not involved in the drug trade.

16   He's not involved in terrorism or in guns.  He ran afoul of

17   this guy Luu and Mr. Luu, who is an arch criminal, with a far

18   more extensive criminal record, ended up getting involved --

19   Martin got involved way over his head.  But he was involved.

20   And now at age 62 he is facing sentencing guidelines of

21   essentially 5 to 6 years, 57 to 71 months by Your Honor's

22   calculation.

23         In the circumstances, Your Honor, we suggest that

24   given his poor health, given his unfortunate slump into what I

25   would call alcoholism at this stage of his life on account of

1    all of the troubles that have been heaped on him, that a

2    sentence at the low end of 57 months is more than adequate.  A

3    sentence of 57 months to a man who is 62 years old, Your Honor,

4    is far, far more meaningful than a sentence of even 71 months

5    to a man who is 30.

6          If you give him a sentence of 57 months, he will do at

7    least four-and-a-half years of that, which means that he will

8    be 66, 67 years old when he gets out of prison, with a bleak,

9    bleak prospect for future employment, notwithstanding an

10   education as an engineer.

11         His wife is currently in prison as a result of this

12   case.

13         In the circumstances, Your Honor, the low end is way,

14   way significant and it will not depreciate from the seriousness

15   of this offense.

16         We ask Your Honor to recommend to the Bureau of

17   Prisons that they afford Mr. Martin substance abuse counseling

18   because of his alcoholism.  We ask Your Honor to recommend to

19   the Bureau of Prisons that he be incarcerated at the federal

20   prison camp at Lompoc, but the second choice would be at the

21   FCI Terminal Island in Los Angeles.

22         And lastly, Your Honor, we would ask that you stay the

23   mittimus in this case to permit him to continue to try to keep

24   the household together until his wife gets out of prison in

25   January of next -- of 2007.

1          That's our request, Your Honor.  I think it is
2   reasonable in the circumstances.  I think it meets the test of
3   18, United States Code, 3553(a) in terms of an appropriate
4   sentence given the circumstances and the facts in this
5   particular case.
6          I asked Mr. Martin this morning if he wished to
7   address Your Honor and exercise his right of allocution.  He
8   informed me that because he had submitted his letter to you.
9          THE COURT:  Which I have.
10         MR. WEIGHT:  Which you have and I know you've read,
11  that he would -- he would waive his right to allocution at this
12  point.
13         THE COURT:  All right.  So you do not want to address
14  the court, Mr. Martin?
15         THE DEFENDANT:  Good morning, Your Honor.
16         THE COURT:  Good morning.
17         THE DEFENDANT:  First of all, I would like to say that
18  I'm very sorry and remorseful over what I did and I know I was
19  really blindly dragged into something that I never wished to do
20  because I want to fight the crimes.  I want to help the
21  government with all my skills and talents.  And I think we -- a
22  waste of my skills and talents being sent to jail for a long
23  time and I will be getting out, I will be just a parasite to
24  society and that's exactly what I don't want.  I want to use
25  the time I'm in, the skills that I am still able to perform

1    right now to help the government.  Thank you, Your Honor.

2              THE COURT:  Okay.

3              MR. SHIPLEY:  Just briefly, Your Honor.  Obviously, as

4    the court is aware from the -- from the very detailed

5    presentence report, the criminal activity here was just

6    pervasive and extensive.  And I think if the court looks back

7    at the defendant's criminal history, his conviction for tax

8    fraud, his release from the tax fraud, the sentence, unable to

9    restart his construction business because he couldn't get

10   insurance and he couldn't get relicensed, he immediately jumped

11   into this long string of criminal activity.  I mean there's

12   almost no down time between the time he comes out of prison and

13   the time he launches into this two-and-a-half, three-year

14   period of myriad types of fraudulent conduct.

15             Mr. Martin at various times, as reflected in the

16   2 pieces of correspondence provided to the court by the

17   probation officer, has denied any wrongdoing.  He's -- he's

18   claimed first that he was entrapped.  Now he kind of backs away

19   from the entrapment, I think on the advice of counsel,

20   understanding the implications of that, now he just says that I

21   ran into Mr. Luu, a master criminal.  You know, he's -- he's

22   trying to salvage the acceptance and he's right on the

23   borderline of doing so.

24             And I don't know that, you know, Mr. Martin really

25   understands the -- the agony that he put his victims through,

1    as is reflected in -- in the probation officer's recollection

2    of some of the comments of the victims.

3        Two victims -- what happened to Mr. Martin is, two of

4    the victims that he -- that he took significant advantage of,

5    referred to as DM and LM in the probation report, what

6    Mr. Martin didn't realize is that those two individuals are

7    extremely wealthy.  And they had the ability, as soon as they

8    realized what had happened, to hire a private investigator who

9    immediately tracked down what had gone on, forwarded that

10    information to law enforcement.

11        I understand the court's giving a two-level

12    enhancement for leadership and I understand -- but -- but in

13    looking at the way the sentence is calculated because of the

14    grouping of counts and the low dollar value on the copyright

15    infringement, he in effect gets the copyright infringement

16    crime for free because it adds nothing to his sentence.  On

17    that basis I think a sentence at the top of the guidelines here

18    is appropriate given the recency of the past criminal act

19    conduct involving fraud, given the pervasiveness of the

20    criminal conduct here, and given the fact the defendant is

21    getting nothing for this -- this very significant copyright

22    infringement activity, I would ask for a sentence at the top

23    end of the guideline range and ask the court to sentence the

24    defendant to 71 months.

25        I also would ask the court to enter the oral order of

1    forfeiture as part of the sentence pursuant to the stipulation

2    of the plea agreement, and I have a written final order of

3    forfeiture prepared for the court's signature today.

4         THE COURT:  Well, I've looked pretty carefully at this

5    case and it just kind of amazes me that Mr. Martin was

6    apparently a jack of all trades.  Not only did he have the

7    phony credit card operation going, which was relatively

8    extensive, and was traveling all over the Mainland and

9    laundering money and opening accounts and he was a busy guy,

10   but he also had this illegal video dubbing operation going,

11   which was -- I mean at his house they -- they located 66 boxes

12   of videotapes, 177 video cassette recorders, 11 televisions, 10

13   DVD players, 9 boxes of instrumentalities of videotape

14   reproduction, and other things.

15        And at the business which he was at with his sister,

16   they got 203 boxes of bootlegged videotapes?

17        Now, this isn't somebody dubbing a DVD or a videotape

18   at home to time shift, which might be a gray area under the

19   Sony decision.  This is -- this is just flat outright sale of

20   and making of videotapes for profit on a grand scale here.

21        I guess he must have been doing okay financially, I

22   don't know, with all this stuff going on.

23        Now, this on top of him just getting out of prison.

24        Now, I -- I recognize that Mr. Martin might be an

25   alcoholic, and I think he probably is, might have dabbled in

1    drugs too for all I know.  But this is just beyond the pale

2    here.  I mean he had a very, very substantial criminal history.

3    He was going bonkers here one way or the other.  He has every

4    kind of illegal operation going he can get I think within the

5    scope of his circumstances.  And just coming right on the heels

6    of getting out of jail, which leads the court to believe that

7    unfortunately Mr. Martin, who tells me that he wants to fight

8    crime, that's what he just said in the courtroom today, he's

9    going to fight crime, fight crime with 177 video cassette

10    recorders, making copies of Chinese and Vietnamese movies and

11    soap operas for sale and lease?  No, I don't think so.

12        I think what he was trying to do was to make as much

13    money as he possibly could, any way he could and he really

14    unfortunately blew it.

15        You know, the other evening they had a dinner in my

16    honor and somebody said that they thought I had mellowed out.

17    I think I probably have mellowed out to some degree over the

18    last 18 years.  Comes from, I guess, experience.  But the

19    bottom line is that on something like this, there's no middle

20    ground.  I mean I'm afraid, Mr. Weight, that, you know, I think

21    that you've done about as much as you can for Mr. Martin, but

22    Mr. Martin has really kind of sunk his own ship here.  And I

23    have to agree with the government.  I rarely give a sentence at

24    the high end of the guidelines.  I mean I rarely do it.  And --

25    but I'm afraid in this case one is justified.  I mean it

1    just -- if -- if this would not have come on his just getting

2    out of jail and if it had been just one maybe operation, but

3    this man had a diverse kind of portfolio of crime going and

4    just unfortunately put himself in that position.

5         So pursuant to the Sentencing Reform Act of 1984, it

6    is the judgment of the court that the defendant Abraham Nguyen

7    Martin is committed to the custody of the Attorney General of

8    the United States or his authorized representative to be

9    imprisoned for a term of 70 months as to all counts of

10   convictions, all terms to run concurrently, or together.

11        After he has completed the term of imprisonment he

12   must serve a term of supervised release of 5 years as to Counts

13   9, 12, 13, 20, 22, 27, 29, 30, 32, 34, 38, 40, 42, 44, 46, 54,

14   59, 63, 68, 69, 72, 75, 76 and 77 of the superseding

15   indictment, and 3 years as to Counts 11, 16, 17, 48, 49, 50,

16   56, 57, 58 and 71 of the superseding indictment, and Counts 9

17   and 10 of the information, all terms to run together, or

18   concurrently.

19        During the term of supervised release he is to abide

20   by the following conditions:

21        He must abide by the standard conditions of

22   supervision.

23        He shall not commit any federal, state or local

24   crimes.

25        Shall not possess any illegal controlled substances.

1          Must cooperate in the collection of DNA as directed by
2    the probation office.
3          Shall refrain from the unlawful use of a controlled
4    substance.
5          Shall submit to one drug test within 15 days of the
6    commencement of supervision and at least two drug tests
7    thereafter, but no more than eight valid drug tests per month
8    during the term of supervision.
9          The same shall go for alcohol testing on the same
10   schedule.
11         Shall not possess a firearm, ammunition, destructive
12   device or other dangerous weapon.
13         Must pay restitution of $37,149.91 due immediately of
14   which 29,745.62 owed to Chase Manhattan Bank, Tai Sung Video
15   and Asia View Entertainment is to be paid jointly with
16   co-defendant Anna Martin and any remaining balance upon release
17   from confinement be paid during the period of supervision on an
18   installment basis according to the collection policy of the
19   probation office but at a rate of not less than 10 percent of
20   his monthly gross income.  Interest is waived while he is
21   serving his term of imprisonment; he must commence and accrue
22   on any remaining balance upon release of supervision -- release
23   on supervision I should say.
24         Restitution is due also as follows:  Hawaii National
25   Bank, 5,324.63; DM Junior, 2,079.66; Chase Manhattan Bank,

1    16,455.62; Tai Sang Video, 4,620; Asia View Entertainment,

2    8,670.

3         Defendant is prohibited from incurring credit charges

4    or lines of credit without the approval of the probation

5    office.

6         He shall execute all financial disclosure forms and

7    provide the probation office and the financial litigation unit

8    of the U.S. Attorney's Office access to any requested financial

9    information, to include submitting to periodic debtor

10   examinations.

11        And he shall submit his person, residence, place of

12   employment or vehicle to a search conducted by the U.S.

13   Probation Office at a reasonable time, in a reasonable manner

14   based upon reasonable suspicion of contraband or evidence of a

15   violation of a condition of supervision.  Failure to submit to

16   a search may be grounds for revocation of supervision.

17        He doesn't have the financial ability to pay a fine in

18   light of the court's imposition of restitution and therefore I

19   will not impose one, but he must pay a special assessment of

20   $3,700, that's $100 per count.

21        Now, the defendant has, I believe, waived his right to

22   appeal the sentence in the plea agreement and therefore no

23   appeal is available to him.  However, he does have the right to

24   collaterally challenge his sentence by way of a petition at a

25   later time alleging ineffective assistance of counsel.  The

1    court mentions that only because it's my responsibility to

2    advise the defendant of his potential avenues of relief and not

3    because the court believes in any way that Mr. Weight has been

4    ineffective.

5              Yes, Mr. Weight?

6              MR. WEIGHT:  Your Honor, may we have a stay of the

7    mittimus in this case to January of 2007?  May we have a

8    recommendation of the substance abuse program and a

9    recommendation to the FDC Lompoc and alternatively to FCI

10   Terminal Island?

11             THE COURT:  It's too long, Mr. Weight.  I might

12   consider a stay of mittimus of 2 or 3 months but nowhere near a

13   year.

14             MR. WEIGHT:  We'll take what we can get.

15             THE COURT:  Mr. Shipley, do you have any objections?

16             MR. SHIPLEY:  No objection to 60 or 90 days, Your

17   Honor.

18             THE COURT:  All right.  Let's do mittimus 90 days.

19             THE CLERK:  March 6, 2006.

20             MR. WEIGHT:  Very well.

21             THE COURT:  And I want alcohol/drug testing to begin

22   immediately.

23             THE PROBATION OFFICER:  Okay.  I was going to ask

24   about that, Your Honor.  I'll indicate alcohol and drug testing

25   has been ordered.  And I assume that also means that Mr. Martin

1   will be prohibited from consuming any alcohol during the period

2   of supervision.

3         THE COURT:  Yes, that's also part of my order of

4   supervision, no alcoholic beverages at all.

5         THE PROBATION OFFICER:  Okay.  And, Your Honor, one

6   matter of clarification.  The court imposed a sentence of 70

7   months imprisonment, but since Count 10 of the information is

8   statutorily limited to 60 months, I assume it's a 60-month?

9         THE COURT:  That's 60 months just for that count, yes,

10  but it's to run concurrently with the other counts.

11        THE PROBATION OFFICER:  Correct.  Thank you.

12        THE COURT:  Okay.  Anything else?

13        MR. SHIPLEY:  Your Honor, I'd ask the court to include

14  in its judgment forfeiture consistent with the written final

15  order of forfeiture entered by the court.

16        THE COURT:  Yes.  So ordered.

17        MR. WEIGHT:  Recommendation as to facility and BAP?

18        THE COURT:  I will recommend Lompoc camp.

19        MR. WEIGHT:  Thank you.

20        THE COURT:  I've got it in here already, Mr. Weight.

21        MR. WEIGHT:  Okay.

22        THE COURT:  There are no counts to be dismissed?  I

23  thought there were.

24        MR. WEIGHT:  I think there are.

25        MR. SHIPLEY:  Your Honor, there are because there were

23

1    certain counts that we did omit.  But I don't have a list in

2    front of me.  So I would simply move to dismiss all counts to

3    which the defendant has not pled guilty and I will follow-up

4    with a written request listing the specific counts --

5           THE COURT:  Motion is granted.

6           MR. SHIPLEY:  -- consistent therewith.

7           THE PROBATION OFFICER:  And, Your Honor, one last

8    matter, and this comes in the face of Booker.  For the record,

9    does the court wish to state that it has determined the

10   sentence imposed -- that the sentence imposed is reasonable in

11   light of all the statutory factors set forth under 18 U.S.C.

12   3553(a)?

13          THE COURT:  Yes.

14          THE PROBATION OFFICER:  Thank you.

15          THE COURT:  I so state.

16          MR. WEIGHT:  Very well.

17          THE COURT:  I thought I already stated that, but

18   that's okay.  Without mentioning the numbers.

19          Yes, Mr. Shipley?

20          MR. SHIPLEY:  May I approach with the final order of

21   forfeiture, Your Honor?

22          THE COURT:  Yes.

23          MR. SHIPLEY:  (Handing document).

24          THE COURT:  You reviewed this, Mr. Weight?

25          MR. WEIGHT:  I'm sorry, Your Honor?

1          THE COURT:  You've reviewed this?

2          MR. WEIGHT:  I have reviewed it.

3          THE CLERK:  Did you want him to report at 2:00 p.m.,

4    no later than 2:00 p.m.?

5          THE COURT:  Yeah, that's right.  You are to report --

6    what's the date, I'm sorry?

7          MR. WEIGHT:  March 6, Your Honor.

8          THE COURT:  All right.  March 6, 2006, no later than

9    2:00 p.m. local time to the institution to which he has been

10   designated.

11         MR. WEIGHT:  Very good.  Thank you, Your Honor.

12         MR. SHIPLEY:  Thank you, Your Honor.

13         THE COURT:  Okay.  Court stands in recess.

14         (The proceedings concluded at 9:45 a.m., December 5,

15   2005.)

16

17

18

19

20

21

22

23

24

25

1                     COURT REPORTER'S CERTIFICATE

2

3           I, CYNTHIA FAZIO, Official Court Reporter, United

4    States District Court, District of Hawaii, Honolulu, Hawaii, do

5    hereby certify that the foregoing pages numbered 1 through 24

6    is a correct transcript of the proceedings had in connection

7    with the above-entitled matter.

8

            DATED at Honolulu, Hawaii, February 8, 2007.

9

10

11                          /s/ Cynthia Fazio
                       _____
12                       CYNTHIA FAZIO, RMR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25