ABRAHAM MARTIN
87158-022
Federal Prison Camp
3705 West Farm Road
Lompoc, CA 93436

IN PRO SE APPELLANT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 28 2007

at __ o'clock and ___ min. __ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ABRAHAM NGUYEN MARTIN,<br><br>　　　　Appellant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Appellee. | CV. NO. 06-00629 DAE-LEK<br>CR. NO. 04-00322 DAE<br>CV. NO. 06-00632 DAE-LEK<br>CR. NO. 05-00049 DAE<br>**NINTH CIRCUIT NO. 07-16756**<br><br>ANALYSIS OF THE DISTRICT<br>COURT'S ORDER DENYING<br>APPELLANT'S MOTION FOR<br>COA; EXHIBITS "A - D";<br>CERTIFICATE OF SERVICE |

ANALYSIS OF THE DISTRICT COURT'S ORDER DENYING
APPELLANT'S MOTION FOR COA

**COMES NOW**, Abraham Nguyen Martin, hereinafter "Martin", appellant in propria persona in the above-mentioned civil action, and respecfully submits, in good faith, to this Honorable Court his Analysis of the District Court's Order denying his Motion for COA, based on the denial of Martin's habeas corpus petition, Title 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence for a Person in Federal Custody, filed on August 16, 2007.

This analysis of the court order is based on the files and records of the civil proceeding, points and authorities, and Martin's declaration herewtih appended.

## ANALYSIS OF THE DISTRICT COURT'S ORDER DENYING APPELLANT'S MOTION FOR COA

### A. ERRORS AND OMISSIONS

1. On page 1, the district court failed to mention the "Information", the second charging document of 10 counts brought about by the prosecutor, before an 80-count Superseding Indictment was returned. Martin pled "not guilty" due to Luu's wire fraud charges unlawfully imposed.

2. On page 2 of the Order, the district court stated:"**On August 24, 2006, the Ninth Circuit affirmed Petitioner's conviction and sentence upon Petitioner's appeal.**" on line 8 and 9. Upon review of Martin's file from Ninth Circuit, it is found out that this is a distorted fact. The district court simply "put words in the Ninth Circuit's mouth" and evidently prejudiced Martin in his appeal to Ninth Circuit. Since Martin was ignorant about criminal law last year after self-surrender to Lompoc FPC, but wanted to appeal his excessive sentence, he wrote to the Clerk of the Court of Appeals on August 20, 2006 (received on 8/23/2006) imploring the possibility of appealing his illegal sentence. See Exhibit "A" herewith attached. The non-conforming "Notice to Appeal" was construed by the Ninth Circuit as a "Direct Appeal" which was dismissed as "**untimely**" ("The Notice of appeal in a criminal matter must be filed within ten days after entry of judgment.", the Circuit Court stated in the Dismissal Order. See Exhibit "B" herewith appended.

    This wanton statement from the Order greatly puzzles Appellant Martin with regard to other statements made by this Court elsewhere in the Order, especially after the fact that

Martin had alleged that the district court is biased.

3. On line 16, the Order said:"....conspired with Petitioner's defense counsel to prevent Petitioner from exercising his constitutional right to plead not guilty three times, ...." This statement from the district court is distinctly distorted. Even though Martin's native tongue is **not** English, this court-interpreted statement certainly twisted the true meaning of Martin's allegation. On page 2, section II(B)(9), Martin stated: " The prosecutor is a prevaricator, .... , and was in conspiracy with Martin's defense lawyer to augment the defendant's offense, for his exercising a constitutional right to plead 'not guilty' three (3) times. ..." The real meaning of this is nothing but: " Martin, exercising his constitutional right to plead 'not guilty' three times, was betrayed by his defense counsel who conspired with the prosecutor to increase Martin's offense." See line 16, 17, 18 of page 3.

4. the last paragraph of page 6 and on to page 7: "...Petitioner, however, has failed to specify which counts of the 80-count Indictment were impermissibly double-counted against him ...." Appellant Martin has abundantly demonstrated in his Motion 2255 pleadings that both the Indictment and Superseding Indictment are double-counting. Specific double-counting counts were enumerated in section I(1) on page 2 of Petitioner's Supplementary Reply/Traverse, dated July 9, 2007, as follows: (one single check is charged both as bank fraud and access device fraud) 9-10, 13-14, 18-19, 20-21, 22-23, 27-28, 30-31, 32-33, 34-35, 36-37, 38-39, 40-41, 42-43, 44-45, 46-47, 51-52, 54-55, 59-60, 61-62, 63-64, 65-66, 69-70, 72-73, <u>resulting in an incredible volume increase of $136,035.63</u>. E.g., the same check is charged in count 9 as bank fraud and in count 10

- 3 -

as access device fraud, and the same with count 13 and **14**, and so on, for a total of 23 counts of double-counting.

The second paragraph on page 7, "Petitioner has failed to show that the prosecution was prejudicial and vindictive against him. Petitioner only makes mere accusations and gripes.... The district court, by providing this argument, clearly affirms its bias for the government. Petitioner Martin, in his Motion for COA, clearly demonstrates in II(A)(1 to 9) that the prosecutor has engaged in misconduct, vindictiveness and prejudicial prosecution. Since the court itself denied Martin **Due Process** of the most basic sort by not holding the Evidentiary Hearing and by being **inconsistent with its ruling**, Martin was not afforded an apportunity to prove his allegations which are **ALL TRUE.** The district court avoided ordering the prosecutor to produce all the evidence favorable to the defense, which are requested in Martin's Motion for Evidentiary Hearing. The district court relied on the "papers" only, which, to Martin, are perjured statements from Luu and the government agents. And the court did use these perjured statements to impose a harsh sentence on Martin. The interests of justice are, **ERGO,** totally impaired and smeared in this instant case. Moreover, the court has been autocratic in all of its decisions and rulings so far. Martin therefore has seen **"no justice"** in the court system, the way the criminal proceeding has been conducted, completely violating the United States Constitution.

Luu has been shown to be the ring leader of 50 or more criminals in Hawaii. Had this information been disclosed earlier, would the district court still have erroneously assumed and presumed the way it did? The government still conceals this evidence till now.

- 4 -

On the same page, page 7, line 17 and 18, the Order stated: "Similarly, Petitioner has failed to demonstrate that this Court was biased towards the government, or has committed clear error in imposing his sentence.", see page 8, line 1. Petitioner has some dilemma to find a proper response to this Order statement. Since the Court chose not to address all the appeal issues as raised in Martin's Motion for COA, section II(D)(1-13) which indicate prejudicial allegations shown by the Court, and which will be concurred by all jurists of reason, Martin can only conclude that this statement from the Order reaffirms Martin's claim that this Court is biased and peremptory in both criminal and civil proceedings.

5. Martin hereby takes leave to go back to page 2 of the Order, line 15 and 16. The Order states: "On July 16, 2007, this Court denied Petitioner's § 2255 Motion.". The correct date is August 16, 2007.

6. The last paragraph on page 9 to line 15 on page 10: the Court is autocratic and peremptory in this argument. The mitigating circumstances do exist as presented, and the reason the PSR does not identify any is because the PSR is basically a product of the vindictive prosecutor, who supplied the Probation Office with all the aggravating evidence (all the so-called dismissed counts, perjured statements from Luu and government agents, etc..), and none of the mitigating circumstances. The PSR is, **ergo,** completely erroneous, as abundantly demonstrated in Martin's Amendment to Motion 2255, Request for Modification of the Presentence Investigation Report, and this Court ignored

this request. The Court's Order statement on page 10, line 4 to 8 is also autocratic and peremptory. The aggravating factors are created and painted by the vindictive prosecutor, who is also a prevaricator, and who is good at concealing evidence favorable to the defense, until this very date. As demonstrated, the prosecutor would use any evil means and/or ultra vires to obtain an illegal and unjudicial conviction. He, ergo, engages in "injustice" and/or "miscarriage of justice". In the case at bar, the prosecutor charged Martin with many multiplicitous and double-counting counts in both the Indictment and Superseding Indictment, which both defense lawyer and the Court failed to raise objection and/or question, and many of these counts (as alleged in 2001 to June 2002) are legitimate transactions. Since Martin's defense lawyer was so ineffective and overwhelmed with 60 cases, he would not file any motion, despite arduous instructions to him, to demand evidence of these counts. Martin was, ergo, prejudiced by his incompetent public defender who did not seem to know any law, since he never used any, despite 40 years of law practice.

    The Court's Order, on line 8 through 15, page 10, accused Martin of "... he does not accept responsibility for his crimes .... "his denial of responsibility for his crimes ...." In this particular statement, the Court failed to add: "AND THE CRIMES OF LUU ALSO.", because this is exactly what the government was set out to do, blaming Martin for all of Luu's crimes (wire fraud charges in all three charging documents, mail theft, conspiracy, etc ...). The U.S. Attorney's Office even provided the local newspaper with a news release naming Abraham Martin as

- 6 -

one of the national ID thieves (instead of Luu who is the kingpin in all types of white collar crime, and who is the ring leader, supervisor, manager in charge of 50 or more criminals in Hawaii). Martin is, ergo, prejudiced by the biased district court in this respect. Martin never appealed his first offense sentence in 1999, since it was just and fair, under Judge Susan Mollway (12/14/1999). Moreover, this accusation further affirms Martin's allegation in II(D)(5) that the district court is repulsive to the truth or true facts if these were raised by the defendant in his/**her** own theory of defense. Not only Martin was entrapped by Luu into committing the offense, but also many others, such as "Michael" (1660 Piikoi Street; Lim Kwon, ex-judge, ex-movie star is the landlord), Hue, Cuc Nguyen, Jane Nguyen, etc...), as already pointed out in Motion 2255 pleadings.

7. Regarding the U.S.S.G. § 5H1.6 circumstances to consider for departure, Commentary Note (1)(B)(i - iv), Appellant Martin will meet the conditions of guidance. The Court's argument on page 13 is based on the court's assumption and presumption, since the court is **not** Abraham or Anna, and the court certainly has not been suffering from the agony, suffering, hardship, pain, loneliness, worries which both Abraham and Anna have been going through. If Judge David Alan Ezra and his wife were in Abraham's and Anna's shoes, this argument would not hold. In a Vietnamese family, the husband is the principal bread-earner and supporter. Martin has been the main family supporter and caretaker, and has been caring for his sick wife since the beginning of year 1999. Moreover, Anna has frequent nocturnal seizures, as certified by her doctor,

it is therefore a must for her to have her husband at her side when nocturnal seizures take place, to immediately transport her to a hospital emergency room to be saved by medical experts. No one else can replace her husband for this particular obligation. Anna also suffers from occasional paralyzation of her limbs, neck, back and a terrible headache. She needs her husband, who is also a Vietnamese martial arts instructor who has special massage skills to perform instant massage over the pain area(s) to alleviate the suffering. As far as financial burden is concerned, Anna has to live day by day without any income and with overwhelved worries. Even though she is temporarily supported by her two children, she suffers tremendously due to all kinds of sacrifices have to be made, depriving her of the basic life and enjoyment. The family expenses and other financial obligations outweigh the maximum support which her two children can provide. Furthermore, her children have the lives of their own, being grown-up in the United States; the family doctrine of which is individualism and selfishness. Their support can fall short any time, either dictated by their own lives or by other events and circumstances. Judge David Alan Ezra would never understand, since he has been known among inmates from Hawaii as the "hanging judge"; and the fact that he has been known to hate the "Vietnamese", probably being racially-biased. He has treated Vietnamese in his court room in a manner similar to "Hitler" treating the Jews in World War II. A law firm in Honolulu has been watching this fact for quite a number of years now. Maybe the most recent overturned conviction in **USA v. Wood** from 9th Circuit will ring the bell.

8. Ineffective Assistance of Counsel: (on page 14 of the Order) Since the district court is biased, Appellant Martin finds it unnecessary to mention much here. An attorney who has never provided "active and adversarial" protection for his client is simply ineffective and incompetent. A client who has placed his full trust in his defense lawyer who later turned around to "sell him alive" is known to be "betrayed" by his lawyer. A conscientious and decent lawyer would "never" betray his client by turning around and provided the prosecutor with an affidavit (or declaration) in an effort to assist the latter in the unjudicial, unlawful and vindictive prosecution and conviction. The provided declaration contains deceitful information and prevarications, unfortunately. Only and only men without dignity would do this, without shame. As Martin mentioned earlier in his various motion 2255 pleadings, **"birds of the same feather flock together"**, and cover-ups have taken place here in the Hawaii District Court.

In accusing Martin of his failure to raise convincing argument in motion 2255 and motion for COA, the Court failed to mention that it violates Martin's Fifth Amendment Due Process Clause by **"not holding an evidentiary hearing"**, thereby suppressing Martin from proving his allegations, in this particular issue or any other issue, to be **true**. The Court has avoided ordering the government, as requested in Martin's motion for evidentiary hearing, the various documents as mandated by **Brady, Jencks, section 3500, etc..** because the Court erred in using the incorrect information to sentence Martin. The Court is, ergo, repulsive to the truth, simply because Martin's allegations are **true**, as claimed in his

- 9 -

Motion for COA, section II(D)(5) on page 6.

B. **POINTS AND AUTHORITIES**

   1. Multiplicity and Double-Counting:

"Double-counting occurs when identical conduct is described in two different ways so that two adjustments apply." **United States v. Haines**, 32 F.3d 290 (7th Cir. 1994). "...double-counting violated Eightth and Fourteenth Amendments." **Collins v. Lockhart**, 754 F.2d 259 (8th Cir. 1985). In this instant case, the prosecutor engaged in this misconduct, to exaggerate the offense in both the Indictment and the Superseding Indictment. See Exhibit "C" appended.

"Multiplicity is charging a single offense in more than one count in an indictment. Accordingly, it 'addresses double jeopardy; and where the jury is allowed to return convictions on multiplicitous counts, the remedy is to remand for resentencing, with the government dismissing the counts that created the multiplicity.'" **United States v. Galvan**, 949 F.2d 777, 781; **United States v. Lemons**, 941 F.2d 309, 317 (5th Cir. 1991) (quoting **United States v. Moody**, 923 F.2d 341, 347 (5th Cir.) cert.denied, ___U.S.___ 116 L.Ed.2d 54 (1991). Due to ineffective and betraying defense counsel, no objection was raised before sentencing. See Exhibit "C" attached. Moreover, Martin's offense occured during a short period of approximately 7 months, late June 2002 to early January 2003, when Luu gave him mostly credit card access checks and directed him where to go to open bank accounts and deposit them. So basically one type of offense was involved here, access checks. In **Whalem v. United States, 445 U.S. 684, 63 L.Ed.2d 715, 731, 100 S.Ct 1432 (1980)**, the Supreme Court stated: "In **Crepps v. Durden,** 2 Cowd., 64-0, 98 Eng.Rep.1283(K.B.1977), Lord

Mansfield, writing for a unanimous court, held that the sale of four loafs of bread on Sunday in Violation of a statute forbidding such sale constituted one offense, not four. According to Lord Mansfield: "If the Act of Parliament gives authority to levy but one penalty there is an end to the question ....".

In **United States v. James**, 980 F.2d 1314 (9th Cir. 1992), the Ninth Circuit held: (1) each count of indictment must stand on its own and cannot base its validity on allegations on any other count not specifically incorporated; and (2) generally, failure of indictment to deal with each element of charged offense is fatal defect. So if indictment is multiplicitous, and thereby defective, if single offense is alleged in a number of counts, unfairly increasing defendant's exposure to criminal sanctions. See **United States v. Hord**, 6 F.3d 276 (5th Cir. 1993).

In the case at bar, Appellant Martin suffered not only "double-counting and multiplicity of counts, but also **"triple or quadruple-counting**, as explained in Exhibit "A" attached to "Appellant's Statement of the Record on Appeal to the Court of Appeals for the Ninth Circuit", dated November 13, 2007.

3. Constructive Amendment to Indictment:

Constructive Amendment to Indictment, also referred to as "amendment of indictment", is defined in Black's law dictionary as "the alteration of the charging terms of an indictment, either literally or in effect, after the grand jury has made a decision on it. The indictment usu. cannot be amended at trial in a way that would prejudice the defendant by having a trial on matters that were not contained in the indictment. To do so would violate the defendant's Fifth Amendment right to indictment by

- 11 -

grand jury.". In the case at bar, the prosecutor engaging in ultra vires and vindictiveness in his prosecution, constructively amended the Superseding Indictment which itself is multiplicitous and double-counting, without respect and regard for the law, by drafting such an unconstitutionally evil plea agreement containing two counts of the Information, practically modifying the terms of the Superseding Indictment. He then coerced Martin into entering, pleading guilty to it, or else Martin's wife would be taken to trial. Martin's wife was innocent but was helpless and defenseless, Martin had no choice but agreed, under the advice of his incompetent and disloyal counsel. In **United States v. Molinaro**, 11 F.3d 853 (9th Cir. 1993), the Ninth Circuit held that the Fifth Amendment requires that defendant be tried only on charges handed down by grand jury and thus, after indictment has been returned, its charges may not be broadened through amendment except by grand jury. Amendment of indictment occurs when defendant is convicted of charges not included in indictment, and is per se reversible error. See **United States v. Pacheco**, 912 F.2d 297 (9th Cir. 1990). In **United States v. Bryser**, 954 F.2d 1458 (2nd Cir. 1992), the Second Circuit held that constructive amendments to indictment are generally considered prejudicial per se, thereby requiring a new trial. The Second Circuit further stated "constructive amendments of indictment are per se violations of the Fifth Amendment that require reversal even without showing of prejudice. **United States v. Delano**, 55 F.3d 720 (2nd Cir. 1995); **United States v. Mollica**, 849 F.2d 723, 730; **United States Clemente**, 22 F.3d 477, 482 (2nd Cir.) cert. denied, __ U.S. __, 115 S.Ct. 258, 130 L.Ed.2d 178 (1994); **United States v. Weiss**, 752 F.2d 777, 787 (2nd Cir.) cert. denied, 474

U.S. 944, 106 S.Ct. 908, 88 L.Ed.2d 285 (1985). The plea agreement, based upon onstructive amendment to indictment, is therefore unconstitutional and requires reversal. Moreover, the Ninth and Third Circuits held: "Defendant cannot be convicted for offense that was not included in the indictment.**United States v. Douglas**, 974 F.2d 1046 (9th Cir. 1992) and **United States v. Werme**, 939 F.2d 108 (3rd Cir. 1991). See also **United States v. Steele**, 117 F.3d 1231 (11th Cir. 1997) and **United States v. Cancelliere**, 69 F.3d 1116 (11th Cir. 1995).

4. Multiplicity of Sentences:

In **United States v. Dixon**, 273 F.3d 636 (5th Cir. 2001), the Fifth Circuit stated: "Complaint about multiplicity of sentences can be raised for the first time on appeal." In this instant case, the multiplicity of sentences was a product of the prosecutor's vindictiveness, misconduct and disregard for the law and the integrity of the United States Government, by engaging in the constructive amendment to indictment as elaborated in the previous paragraph (3). Therefore, judgment in a criminal case, Cr. No. 05-00049-01, is unconstitutional and requires reversal.

5. Violation of Rule 11 - Plea:

Appellant Martin has abundantly demonstrated that he was prejudiced by the unconstitutionally evil plea agreement. Not only did he receive none of fair plea bargaining but also was coerced into pleading guilty to it, which is built on constructive amendment to indictment. Since Martin's defense lawyer was disloyal and did not seem to know any law, he raised no objec-

- 13 -

tion whatsoever but instead acquiesced in the prosecution's misconduct and vindictiveness. Martin was severely prejudiced as a result. In judging the validity of guilty pleas, determinative factors, inter alia, are:

   a. right to effective counsel;
   b. requirement that plea be made voluntarily:
   c. factors bearing on character of plea as voluntarily made:
      i. coercion
      ii. threats or intimidation
      iii. promises and plea bargaining
      iv. deception or trick
      v. motivation/circumstances of accused (innocent sick wife being coerced as well)
      vi. other factors, etc...
   d. requirement that plea be made intelligently;
   e. factors bearing on character of plea as intelligently made:
      i. competency of accused when entering plea
      ii. accused's understanding of nature of charges
      iii. accused's understanding of consequences of plea
      iv. competence of counsel
      v. other factors, etc...
   f. requirement that record disclose that plea was made voluntarily and intelligently
   g. effect of Rule 11 of Federal Rules of Criminal Procedure
   h. effect of fact that plea constitutes waiver of certain constitutional rights
   i. miscellaneous factors at time of plea as affecting defendant's constitutional rights

In the case at bar, many prosecutorial violations have been detected and shown in the civil procedding of Motion 2255, and it will be a redundancy to repeat them here. Furthermore, Martin is a non-lawyer, ignorant of criminal law or with a superficial knowledge of it, hereby refrains from **"teaching monkeys how to climb a tree"** (showing lawyers about the law). However, a few law cases are presented here in this regard. The plea agreement is invalid by subjecting defendant to some form of coercion, violating defendant's constitutional rights. **Kercheval v. United States**, 274 U.S. 220, 71 L.Ed. 1009, 47 S.Ct. 582 (1927); **Parker v. North Carolina**, 397 U.S. 790, 25 L.Ed.2d 785, 90 S.Ct. 1458

(1970); **Brady v. United States**, 397 U.S. 742, 25 L.Ed.2d 747, 90 S.Ct. 1463 (1970). The Supreme Court further said that due process forbids convicting a defendant on the basis of a coerced guilty plea. See **United States v. Jackson**, 390 U.S. 570, 20 L.Ed.2d 138, 88 S.Ct. 1209; **Waley v. Johnson**, 316 U.S. 101, 86 L.Ed. 1302, 62 S.Ct. 964 (1942). Attention is called to the fact that by amendment in 1966, the requirement was added to Rule 11 of the Fed.R.Crim.P., that a court shall not accept a plea of guilty without first determining that the plea is made with the understanding of the consequences of the plea. A number of Supreme Court decisions have held and recognized that a guilty plea, in order to be valid, must have been made by the accused with an understanding of the consequences. See **Id. supra**. In **Carter v. Illinois** (1946), 329 U.S. 173, 91 L. Ed. 172, 67 S.Ct. 216, the Supreme Court noted that the "racial handicap of the defendant was a factor which might suggest fundamental unfairness in the proceedings before the trial judge at the time the defendant pleaded guilty. Furthermore, under Rule 11, the sentencing judge must develop on the record, the factual basis for a guilty plea, as, for example, by having the accused desbribe the conduct that gave rise to the charge. **Santobello v. New York**, 404 U.S. 257, 30 L.Ed.2d 427, 92 S.Ct. 495. Noncompliance deprives the defendant of the Rule's procedural safeguards, and district court accepts his guilty plea without fully adhering to the procedure provided for Rule 11, his conviction must be reversed. See **McCarthy v. United States**, 394 U.S. 459 (1969); **United States v. Boone**, 543 F.2d 1090 (4th Cir. 1976). Moreover, in **United States v. Ruiz**, 536 U.S. 622 (2002), the Ninth Circuit pointed out that the Constitution requires prosecutors to make certain impeachment

information available to a defendant before trial. It decided that this obligation entitles defendants to receive the same information before they enter into a plea agreement. The Ninth Circuit also decided that the Constitution prohibits defendants from waiver their right to that information. And it held that the prosecutors' standard "fast track" plea agreement was unlawful because it insisted on that waiver. See also **Brady v. Maryland,** 373 U.S. 83, 10 L.Ed.2d 215 (1963), in which "Due process requires prosecutors to 'avoi[d] ... an unfair trial' by making available to an accused ... where the evidence is material either to guilt or to punishment". In the case at bar, the prosecutor has concealed all evidence favorable to the defense till this very date and the court has avoided ordering the government to produce all the documents favorable to the defense, as requested in Appellant Martin's Motion for Evidentiary Hearing.

5. Presentence Investigation Report (PSR):

The PSR in this instant case is groasly prejudicial, erroneous and unconstitutional. Martin provided his analysis of the PSR in his Amendment to Motion 2255. The PSR, first of all, contains the prosecutorial constructive amendment to indictment, (which is the Information, already superseded by the Superseding Indictment) and it is therefore unconstitutional and must be modified. Secondly, the PSR contains perjured testimonies from Luu and government agents and other maliciously incorrect information provided by the prosecutor to exaggerate Martin's offense, as affirmed by the Probation Officer in paragraph 180, page 47 (offense level was calculated based on **ALL COUNTS** of the Information and Superseding Indictment, or 90 counts), increasing the

supposedly offense level 15 or less, to total offense level of 21, or 6 to 8 levels unlawfully and unjudicially increased. Luu's crime (wire fraud charges) is also included in this erroneous total offense level, namely USSG § 2B1.1(b)(9)(C), sophisticated means done by Luu. Since the total actual loss volume is between $70,000 to $120,000, USSG § 2B1.1(b)(E) is more appropriate than 2B1.1(b)(G) as stated in the PSR, page 37. Appellant Martin, again, cannot take responsibility for Luu's crime and the prosecutor's malicious misconduct in this instant case. It will be unfair.

6. The Evidentiary Hearing Issue:

A petitioner on federal habeas corpus is entitled to an evidentiary hearing where the petitioner establishes a "colorable" claim for relief, and where the petitioner has never been accorded a state or federal hearing on his claim. **Earp v. Oronski**, 431 F.3d 1158, 1167 (9th Cir. 2005), citing **Townsend v. Sain**, 372 U.S. 293 (1963) and **Keeney v. Tamayo-Reyes**, 504 U.S. 1, 5 (1992). In stating a "colorable" claim, a petitioner is merely required to allege specific facts which, if true, would entitle him to relief. Ibid. In sum, an evidentiary hearing is required under the AEDPA and an appellate court will remand for a hearing if the district court rules without granting one - "where the petitioner establishes a colorable claim for relief and has never been accorded a state or federal hearing on his claim. **Earp**, supra, at 1167. In the case at bar, Martin was granted a hearing but then the court changed its mind, being **inconsistent with its ruling**, would not hold the hearing. The court is ergo repulsive to the truth and true facts since it is already well aware that Martin's allegations are true.

Moreover, the Ninth Circuit also stated: "Where a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts". **Taylor v. Maddox**, 366 F.3d 992, 1001 (9th Cir. 2004; also **Earp**, supra at 1167.

    7. The Restitution Issue:

        On page 50 of the PSR, restitution amount shown as $5,324.53 (Hawaii National Bank), $16,455.62 (Chase Manhattan Bank), $4,620.00 (Tai Seng Video), $8,670.00 (Asia View Entertainment) and $2,079.66 (D.M. count 17). In fereting through the records and investigation, Appellant Martin discovers that the amount $5,324.53 is unjustified since it is not an offense in the Superseding Indictment (a civil matter), $16,455.62 is questionable and requires proof, $4,620.00 is unjustified since the cost for each second VHS tape is only $1.50 (certainly not $10), and the same goes for $8,670.00 (these two particular amounts will need proof or demand letter from counsel of Tai Seng and Asia View), and finally $2,079.66 which a letter of demand is required for verification. For the amount $16,455.62, the government already confiscated the two vehicles, Mercedez and Subaru, despite the fact that Martin already made legitimate payments for many years. In **United States v. Gaytan**, 342 F.3d 1010 (9th Cir. 2003), the Ninth Circuit held that restitution in a criminal case may only compensate a victim for actual losses caused by the defendant's criminal conduct. Federal courts cannot order restitution in a criminal case without a statutory basis. **United States v. Lachowski**, 405 F.3d 696 (8th Cir. 2005); **United States v. Akande,**

200 F.3d 136 (3rd Cir. 1999). In **United States v. Tran**, 234 F.3d 798 (2nd Cir. 2000), the Second Circuit held that improperly ordered restitution constitutes an illegal sentence amounting to plain error. See also **United States v. Thompson**, 113 F.3d 13 (1997)

8. Mitigating Circumstances Issue:

Since the prosecutor painted the picture of a "nasty criminal" and cloaked it over Martin, based on Luu's crimes, Martin was prejudiced and appeared to lose the image of a man of dignity and honor. And yet, Martin does not prevaricate and is not cruel in nature like other perverted and phony people who would never see "a straw in their own eyes". Martin committed the offense just because he ran into Luu. Since Martin's wife is sick and he has to be close to her most of the time, Martin already has a great plan, which is "writing books" (presently he has already started a book entitled **"The Vietnamese Legionaires"** with a chapter on the famous "Battle of Dien Bien Phu". The second book, **"The judge and I"** will be started right after Martin turns in the "Opening Brief" to Ninth Circuit. By writing books, Martin can really take care of his sick wife, day and night, especially in case of sudden seizures. Anna is highly vulnerable to seizures and immediate and emergency care has to be provided, to save her. At the moment, she is mostly by herself, which fact is not recommended by her personal doctor. Martin is therefore the only person who can perform this task. Moreover, Anna's health conditions and blood sugar count will be more stable when her husband is with her, giving her massage and doing household chores to assist her, while writing books. See Exhibit "D" herewith appended. Martin is terribly remorseful for his actions and the effect the incarceration would have on Anna.

He is irreplacable in caring for his sick wife, and provide main support for the family before incarceration. Even though his two children have tried to be in his place, they just cannot entirely replace him, due to the fact that they are adults and have their own lives to tend to, anytime at all. Moreover, their support is no way adequate to Anna the way her husband was to her. See **United States v. Hussein**, 478 F.3d 318 (6th Cir. 2007); **United States v. Petrelli** (2004, SD NY) 506 F Supp. 24 449.

## CONCLUSION

By providing the above Analysis of the District Court Order denying motion for COA, Appellant Martin has tried his best to point out facts which may assist the court to comprehend the picture of the case and circumstances.

DATED: Lompoc, California this 21st day of December 2007

Respectfully submitted,

_____
Abraham Martin
Pro Se Appellant